**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

BONNIE IQBAL,

                       Plaintiff,            1:16-CV-0722 (CFH)

v.

COMMISSIONER OF SOCIAL
SECURITY,

                       Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON        STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.              SUSAN J. REISS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER

Currently before the Court, in this Social Security action filed by Bonnie Iqbal ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 11.) For the reasons set forth below, Plaintiff's motion for judgment on the

pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed.[1]

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1961, making her 52 years old at the application filing date and amended alleged onset date, and 53 years old at the date of the ALJ's decision. Plaintiff reported completing school to the ninth or tenth grade without obtaining a GED. The ALJ found she has past relevant work as a cashier-checker and office helper. Generally, Plaintiff alleges disability consisting of knee problems, lower back problems, neck problems, and high blood pressure.

### B.     Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on July 15, 2013. Plaintiff's application was initially denied on October 17, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). (T.[2] 92-99, 102-03). Plaintiff appeared at a hearing before ALJ Dale Black-Pennington on February 4, 2015, at which time she amended her alleged onset date to August 13, 2013. (*Id.* at 25-69). On August 3, 2015, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (*Id.* at 10-20.) On May 26,

---

[1] The parties consented to the undersigned's jurisdiction of this matter pursuant to 28 U.S.C. § 636(c). Federal Rule of Civil Procedure 73, Local Rule 72.2(b), and General Order 18. Dkt. No. 6.

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." The Bates-stamped page numbers set forth therein will be followed, rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

2

2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3.)

### C. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity from August 13, 2013, the alleged onset date, through September 30, 2014, the date last insured. (T. 12.) The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (*Id.*) The ALJ found at step two that plaintiff had the severe impairments of degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the bilateral knees, hypertension status-post mild stroke, and obesity. (*Id.* at 12-13.) At step three, the ALJ determined that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (*Id.* at 13.) The ALJ considered Listings 1.00 (musculoskeletal system), 4.00 (cardiovascular system), and 11.00 (neurological disorders). (*Id.*) The ALJ then concluded that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] can occasionally climb stairs and ramps; [is] occasionally able to bend or twist; able to frequently, but not repetitively, crouch or reach, except able to occasionally reach overhead; must avoid rapid head movements; can perform frequent, but not continuous, fingering and handling with both hands; and has a limited reading ability.

(*Id.*) At step four, the ALJ found that Plaintiff remained able to perform her past relevant work as a cashier-checker and office helper with the limitations set forth in the RFC. (*Id.* at 19.) Thus, the ALJ determined that Plaintiff was not disabled.

3

### D. Arguments

Plaintiff argues that the ALJ's RFC as it relates to her reading abilities was not sufficiently specific. (Dkt. No. 9, at 4-5 [Pl. Mem. of Law].) Plaintiff argues that this lack of specificity renders the ALJ's conclusion that Plaintiff could perform her past relevant work as a cashier-checker and office helper unsupported by substantial evidence, as both jobs have a Language Development level of 2.[3] (*Id.* at 5) Plaintiff also argues that the ALJ erred in failing to resolve a conflict between the RFC limitation for occasional overhead reaching with the Dictionary of Occupational Titles ("D.O.T.") specifications that show Plaintiff's past work generally requires constant (cashier-checker) or frequent (office helper) reaching. (*Id.* at 6-7) Plaintiff also asserts that there is an unresolved conflict between the RFC limitation for only frequent handling and fingering and the requirements of her past work as a cashier-checker as the D.O.T. indicates that jobs requires constant handling and fingering. (*Id.* at 8).

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ sufficiently explained her findings relating to Plaintiff's reading ability by acknowledging her education level,

---

[3] A Language Development level of two corresponds to an ability to perform the following:
Reading:
Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
Writing:
Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
Speaking:
Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses.

*General Educational Development*, The Revised Handbook of Analyzing Jobs, Chap. 7 (Dept. of Labor, 1991), available at http://www.skilltran.com/rhaj/rhaj7.pdf (last visited June 16, 2017).

4

daily activities, and the lack of evidence substantiating the presence of a mental or cognitive impairment that could limit her reading ability. (Dkt. No. 11, at 14-15 [Def. Mem. of Law].) Defendant also notes that the vocational expert testified that Plaintiff remained able to perform these jobs despite a reading limitation included in the hypothetical question. (*Id.* at 15-16). Defendant contends that, although Plaintiff bore the burden, she provided no evidence to support an inability to read at the level required to perform her past work. (*Id.* at 16)

Second, Defendant argues that whether there were conflicts with the D.O.T. is not dispositive because the ALJ may find an individual not disabled at Step Four based on a retained ability to perform her past work either as generally performed (as described in the D.O.T.) or as actually performed by the individual in the past. (Def. Mem. of Law at 16-17) Defendant also argues that, even if there was a conflict with the job of cashier-checker with relation to handling and fingering, that same conflict did not eliminate Plaintiff's ability to perform her past work as an office helper. (*Id.* at 17-18). Lastly, Defendant argues that the ALJ was entitled to rely on the vocational expert's testimony because the RFC presented a complex situation that did not neatly fall into a particular exertional category. (*Id.*)

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's

determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably

have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Disability Standard

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.     ANALYSIS

#### A. Reading Ability

Residual functional capacity is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 5:11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). When assessing the limitations of an individual's RFC, the adjudicator is restricted to considering "only limitations and restrictions attributable to medically determinable impairments." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).

Plaintiff does not challenge the majority of the RFC determination, but solely argues that the ALJ erred in failing to make the limitation accounting for her reported difficulties with reading more specific. (Dkt. No. 9, at 4-6 [Pl. Mem. of Law].) However,

whether or not the ALJ's inclusion of a notation that Plaintiff has "a limited reading ability" is sufficiently specific to provide a useful description of the extent of Plaintiff's work-related functional abilities is immaterial in this case because Plaintiff has not shown that her alleged difficulties with reading stem from any medically determinable impairment. As noted, SSR 96-8p instructs Social Security Administration adjudicators to consider only limitations that are attributable to medically determinable impairments when formulating the RFC assessment. SSR 96-8p, 1996 WL 374184, at *2. Because the evidence in the record does not establish a medically-determinable cognitive, intellectual, or other impairment that would cause Plaintiff's reading difficulties, pursuant to SSR 96-8p, the ALJ need not even have considered those alleged limitations when assessing the RFC. However, the ALJ's failure to strictly follow SSR 96-8p is harmless, as a correct application of the law would result in the removal of the reading limitation from the RFC and would have no impact on the ultimate outcome of Plaintiff's claim. *See Camarata v. Colvin*, No. 6:14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (conceding that "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.") (citations omitted).

Additionally, even if this Court were to assume the presence of a medically-determinable impairment causing Plaintiff's reading difficulties, the evidence in the record does not support the degree of restrictions that Plaintiff alleges. When discussing Plaintiff's allegations of poor reading ability, the ALJ noted, "in the light most

9

favorable to the claimant, the undersigned [ALJ] finds that the claimant may have some difficulties reading, as it is reflected in the [RFC] below. However, the record does not support any diagnosis indicative of ongoing or consistent mental medically determinable impairment." (T. 13.) It is clear from the ALJ's own explanations that he found little, if any, evidence to substantiate Plaintiff's allegations of reading difficulties, and that the inclusion of such a limitation was the result of giving the claimant the benefit of the doubt. Plaintiff does not point to any evidence other than her own subjective allegations that would support her assertions that she was unable to perform the requirements of the Language Development level two that are necessary to allow her to perform her past relevant work. The ALJ found that Plaintiff's allegations as a whole were not entirely credible – a finding that Plaintiff does not specifically challenge in her appeal – thus, any decision to decline to adopt the full extent of Plaintiff's reported limitation is consistent with that credibility finding. Moreover, Plaintiff does not adduce any evidence that her reading ability declined since the time when she was previously able to perform her past relevant work, that her reading limitations lead to her termination, or that she was unable to properly perform her past relevant work because of her reading ability. There is nothing in the record to support reading limitations preventing the performance of Plaintiff's past relevant work even if this Court were to overlook the absence of a medically-determinable impairment causing these alleged limitations. Consequently, Plaintiff's argument that the reading limitation included in the RFC was not sufficiently specific must be rejected. For the above reasons, the ALJ did not err in failing to include a more specific statement of the extent of Plaintiff's reading limitations in the RFC; thus, remand is not warranted on this ground.

## B.     Inconsistencies between Vocational Expert's Testimony and Dictionary of Occupational Titles

The burden to show disability is on the claimant from steps one through four of the sequential evaluation analysis, though the burden shifts to the Agency at Step Five, at which point the adjudicator must provide evidence that a significant number of jobs exist in the national economy that the claimant is able to perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion'" and the hypothetical "accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

Plaintiff's argument centers around what she asserts is the ALJ's failure to seek and obtain explanations for certain conflicts between the vocational expert's testimony and the descriptions in the D.O.T. of Plaintiff's past jobs of cashier-checker and office helper. (Pl. Mem. of Law at 6-8). However, Plaintiff's argument ignores the fact that these allegedly unresolved conflicts exist at step four of the sequential evaluation in this case, rather than at step five, as in many of the cases Plaintiff cites.[4] As Defendant

---

[4]     For example, plaintiff cites *Bevens v. Colvin*, No. 5:13-CV-0470 (LEK), 2015 WL 5750083 (N.D.N.Y. Sept. 30, 2015) as a relevant case from this Court in which remand was granted based on the ALJ's failure to (1) obtain a reasonable explanation from the vocational expert for a deviation in her testimony regarding reaching from the DOT, and (2) show a basis for relying on the vocational expert's testimony over the DOT. Pl Mem. of Law at 7-8. However, *Bevens* involved a denial at step five of the sequential evaluation. The case currently before the Court, by contrast, is a step four denial where the claimant was found capable of performing past relevant work as it was actually performed. *Id.* at *10. As there are different considerations relevant to making a determination at Step Four and making a determination at step five, including the issue of how a claimant actually performed past relevant work --

correctly notes, Plaintiff bears the burden at step four of showing that she is unable to perform her past relevant work, and the ALJ is entitled to find Plaintiff is not disabled if she can perform her past relevant work either as generally performed in the national economy or as she actually performed it in the past.  (Dkt. No. 11, at 17 [Def. Mem. of Law].)  As the D.O.T. only speaks to how jobs are generally performed in the national economy, an inconsistency with the D.O.T. between how jobs are generally performed and how a claimant performed them in the past is not determinative if substantial evidence supports a finding that the plaintiff remained able to perform her past relevant work as it was actually performed.  *See Albano v. Colvin*, 99 F. Supp. 3d 355, 367-68 (E.D.N.Y. 2015) ("'[A]t the fourth stage of the [SSA] inquiry, the claimant has the burden to show an inability to return to her previous specific jobs *and* an inability to perform her past relevant work generally.") (alteration and emphasis in original) (quoting *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003)); *Grogg v. Comm'r of Soc. Sec.*, No. 11-CV-1381 (NAM/TWD), 2014 WL 1312325, at *13 (N.D.N.Y. Mar. 31, 2014) (noting that it was not necessary to determine whether the plaintiff could perform her past relevant work as actually performed because the ALJ's finding that she could perform it as generally performed was "sufficient to negate a finding of disability at step four[.]") (citing *Jasinski*, 341 F.2d at 185); *Pagnani v. Comm'r of Soc. Sec.*, No. 1:12-CV-1287, 2014 WL 1268912 (NAM/VEB), at *9 (N.D.N.Y. Mar. 26, 2014) (noting that "[a]t step four of the sequential evaluation, the claimant will be found not disabled if she can perform her past relevant work, either as she actually performed it, *or* as it is generally performed in

---

as opposed to strictly focusing on the DOT description of that job --  *Bevens* does not direct the outcome in this case.  *Id.*

the national economy.") (emphasis in original) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)).

In making the step four determination, the ALJ explicitly found that Plaintiff was "able to perform her past work as actually and generally performed," and he included a recitation of the description of the tasks and duties related to the actual performance of these jobs that Plaintiff had given during the hearing testimony. (T. 19.) Therefore, it is clear that the ALJ's step four finding included a determination that Plaintiff remained able to perform her past work as actually performed. The most relevant inquiry then becomes whether Plaintiff's reports of how she actually performed the jobs of cashier-checker and office helper conflict with the limitations included in the RFC assessment.

At the hearing, Plaintiff testified regarding how she performed these two jobs. Regarding her work as a cashier-checker at a casino, Plaintiff testified that she put out products for sale, sold cigarettes, stocked shelves, interacted with customers, accepted money and provided change, stood most of the time, and lifted five-to-ten pounds regularly. (T. 59-60.) Regarding her work as an office helper in a law firm, Plaintiff testified that she sat most of the time; lifted less than five pounds; and she put stickers on files: she took the file out of a box, put it on the desk, put a sticker on it, and then put it to the side, and someone else carried the box of files to and from her station. (*Id.* at 60-62.) These descriptions were elicited while the vocational expert was present for the hearing and in response to the vocational expert's request for more information about the specifics of Plaintiff's past work. (*Id.* at 58-62.) Following Plaintiff's descriptions of how she performed these jobs, the vocational expert classified her past work in terms of the D.O.T., noting that Plaintiff's work as an office helper, which was described as light

13

in the D.O.T., but sedentary as performed. (*Id.* at 62.) In response to the ALJ's first hypothetical question, the vocational expert testified that Plaintiff could perform the office helper position "both as she performed it and as performed in the general labor market"; she also testified that Plaintiff could perform her past relevant work as a cashier-checker, but did not specify whether she could complete this work as it was actually performed and as generally performed. (*Id.* at 63.) The ALJ's responses to the subsequent light-level hypothetical questions with additional non-exertional limitations only indicate that Plaintiff "would still be able to work in the cashier checker position and the office helper position" without specifying whether Plaintiff could complete this work as it was actually performed, generally performed, or both. (*Id.* at 63-64.) Lastly, in response to a hypothetical question that reduced the exertional level to sedentary, the vocational expert testified that Plaintiff could perform work as an office helper "as she performed it, but not as performed in the general labor market." (*Id.* at 64.)

The totality of the testimony recounted indicates that, although the vocational expert did not clearly and specifically testify that Plaintiff remained able to perform her past work *both* as actually and as generally performed for each and every hypothetical question, when providing her testimony, the vocation expert understood and considered how Plaintiff actually performed these jobs. It was reasonable, based on the testimony as a whole, for the ALJ to interpret the less-specific portions of the vocational expert's testimony as indicating an ability to perform these jobs both as actually and as generally performed. Because the ALJ's interpretation of the vocational expert's testimony was reasonable, this Court will not substitute its own interpretation. *See Hart v. Astrue*, 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent [the doctor's] opinion is capable of

more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue*, 901 F. Supp. 2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld."). Substantial evidence supports the ALJ's finding that Plaintiff remained able to perform her past relevant work as a cashier-checker and office helper as those jobs were actually performed.

As substantial evidence supports the ALJ's finding that Plaintiff remained able to perform her past relevant work as actually performed, whether conflicts existed with the D.O.T. definitions showing how those jobs are generally performed in the national economy is immaterial to the issue of whether Plaintiff is disabled. Notably, Plaintiff bore the burden to show that she was unable to perform her past relevant work both as actually and as generally performed, but Plaintiff has not challenged the finding that she is able to perform her past work as actually performed. *See* Pl's Mem. of Law at 6-8; *see also Cobb v. Comm'r of Soc. Sec.*, No. 5:13-CV-0591, 2014 WL 4437566, at *10 (N.D.N.Y. Sept. 9, 2014) (finding the ALJ's step four finding supported by substantial evidence because, "[r]egardless of how the Dictionary of Occupational Titles categorizes this custodial position, Plaintiff actually performed it at a light level, and she has not met her burden to show that she could not perform the work as she actually performed it."). Consequently, Plaintiff's citation to possible conflicts with D.O.T. is not sufficient in this case to suggest that the ALJ's Step Four finding was erroneous. For all the above reasons, the Step Four finding is supported by substantial evidence

regardless of any potential inconsistencies with the D.O.T., and remand is not warranted on this basis.

## IV. CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**;

**IT IS SO ORDERED.**

Dated: August 11, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge